# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>HOLLY M. FLEMING,<br><br>    Defendant. | 8:22CR59<br><br>STATEMENT OF OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION |

  COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney for the District of Nebraska, Thomas J. Kangior, and hereby objects to Magistrate Nelson's July 14, 2022, Findings and Recommendation (Filing No. 30) finding that Count IV of the Fleming Indictment is duplicitous. Should this Court find that Count IV is duplicitous, the United States agrees with Magistrate Nelson's recommendation that Flemings's Motion to Dismiss Count IV of the Indictment (Filing No. 20) should be denied, and the government would elect to proceed on the possession prong of Title 18 U.S.C. § 924(c)(1)(A).

## I.  Facts

  On October 27, 2021, OPD detectives observed Holly M. Fleming conduct a suspected drug transaction at an Omaha location. She left the area in a vehicle and was stopped after officers confirmed that she had a warrant for her arrest. During the stop officers confirmed the warrant and her identity, and she was placed under arrest. A search of her car revealed 206 grams of methamphetamine (more than 50 grams confirmed as actual) in a sack on the floor of the vehicle.

  On February 18, 2022, Douglas County Sheriff's Office K9 deputies conducted a traffic stop in the area of 18th and Vinton Street, Omaha, Nebraska, after observing a known suspended driver driving the vehicle. The driver's identity was confirmed as Terrell C. Bass and the front

seat passenger was Holly Fleming. A K9 was deployed and indicated to the odor of narcotics coming from within the vehicle. A probable cause search of the vehicle revealed approximately 10.5 pounds of suspected methamphetamine in two bags, one found on the passenger floor contained venue belonging to Fleming, the other found on the back seat.

A search warrant was authorized for Bass and Fleming's Omaha residence and served by agents of the Federal Bureau of Investigation and officers of the Omaha Police Department. During the course of the search, an additional 15-16 pounds of methamphetamine were recovered. A black Sig Sauer Mosquito handgun and over $61,000 in cash were recovered near the methamphetamine. During a post arrest interview, Fleming admitted to her involvement in drug dealing and claimed all the evidentiary items were hers. Fleming further admitted that she got the gun from a person in exchange for illegal narcotics.

The Grand Jury for the District of Nebraska returned a four count indictment on March 22, 2022, charging Fleming with Conspiracy to Possess with Intent to Distribute more than 500 grams of a mixture of Methamphetamine, Possession with Intent to Distribute more than 50 grams of actual Methamphetamine, Possession with Intent to Distribute more than 500 grams of a mixture of Methamphetamine, and Possession of a Firearm in Relation to a Drug Trafficking Crime. (Filing No. 1). Count IV of the Indictment reads:

<u>COUNT IV</u>

On or about February 18, 2022, in the District of Nebraska, Defendant HOLLY M. FLEMING did knowingly use and carry a firearm, to wit: a black Sig Sauer Mosquito handgun, during and in relation to, and did knowingly possess such firearm in furtherance of, a drug trafficking crime for which Defendant may be prosecuted in a court of the United States, that is, the offenses described in

Counts I and III.

In violation of Title 18, United States Code, Section 924(c)(1)(A).

(Filing No. 1).

## II. Argument

After Fleming filed a Motion to Dismiss Count IV of the Indictment arguing that it is duplicitous (Filing No. 21), Magistrate Nelson agreed and issued a Findings and Recommendation finding that Count IV is duplicitous. (Filing No. 30). Maginstrate Nelson's finding was based on previous holdings of this Court in United States v. Navarro-Gonzalez, No. 8:21CR72, 2021 WL 3684484, at *2 (D. Neb. June 1, 2021), report and recommendation adopted, No. 8:21CR72, 2021 WL 2910702 (D. Neb. July 12, 2021), and United States v. Rasti, No. 8:21CR151, 2021 WL 3915080, at *2 (D. Neb. Aug. 3, 2021) (finding indictment charging both § 924(c)(1)(A) offenses was duplicitous), report and recommendation adopted, No. 8:21CR151, 2021 WL 3912263 (D. Neb. Sept. 1, 2021); United States v. Polite, No. 8:21CR166, 2021 WL 5043237, at *2 (D. Neb. Oct. 8, 2021) (same), report and recommendation adopted, No. 8:21CR166, 2021 WL 5041209 (D. Neb. Oct. 29, 2021).

In all three of the above cited decisions, this Court was persuaded by language used in United States v. Gamboa, 439 F.3d 796 (8th Cir. 2006), where the Eighth Circuit found that charging both prongs of § 924(c)(1)(A) requires different proof and concluded that the prongs consisted of separate criminal offenses and did not violate the double jeopardy provisions of the Constitution. Id. at 810. The government submits that conclusion and the Gamboa decision itself are flawed, and requests that this Court reconsider its previous rulings. A thorough analysis of the Gamboa decision reveals the flaw and does not support a finding that § 924(c)(1)(A) is duplicitous.

The problem with <u>Gamboa</u> standing for the proposition that both prongs of § 924(c)(1)(A) consists of separate criminal offenses (<u>Gamboa</u>, 439 F.3d at 810), is that on the very next page of the decision, the <u>Gamboa</u> Court held, "[w]e agree with other circuits that have concluded that § 924(c)(1) is best construed as a *single crime* with a choice of penalty options all within the overarching statutory maximum life sentence." <u>Id.</u> at 811(emphasis added). See also, <u>United States v. Sandoval</u>, 241 F.3d 549, 551 (7th Cir. 2001), where the Seventh Circuit held that § 924(c)(1) defines the offense of using or carrying a firearm during a crime of violence, while subsections (A) and (B) single out subsets of those persons [those who carry or use firearms during crimes of violence or drug trafficking] for more severe punishment, and concluding "that these structural distinctions weigh in favor of treating new § 924(c)(1) as defining a single crime with a choice of sentencing penalties based on the presence or absence of various facts, rather than as a statute that defines multiple separate criminal offenses."

While the <u>Gamboa</u> court determined that the "use and carry" and "possession" portions of § 924(c) constituted separate offenses for purposes of Double Jeopardy, the Court did not directly address whether a count charging both prongs of § 924(c) is duplicitous, and if so, what would be appropriate to cure any error. <u>Gamboa</u>, 439 F.3d at 809. Rather, what <u>Gamboa</u> indicates is that a defendant can be charged in two separate counts—one for the "use and carry" of a firearm and another for the "possession" of the same firearm. This creates issues as it runs counter to the unit-of-prosecution rule. When an indictment charges more than one count of the same statutory violation, a court is required to determine whether Congress intended to make each count a separate unit of prosecution. <u>United States v. Woolsey</u>, 759 F.3d 905, 907 (8th Cir. 2014). The <u>Gamboa</u> Court did not conduct any analysis of Congress's intent in enacting § 924(c) or whether they intended to make each prong a separate unit of prosecution.

In Flemings case, a finding that Count IV is duplicitous could result in the government charging the defendant, and future defendants, with two counts of violating § 924(c), with a potential for stacked sentences. These very concerns, and others, were addressed in United States v. Arreola, 467 F.3d 1153 (9th Cir. 2006). Although this Court declined to follow Arreola in Navarro-Gonzalez, the Ninth Circuit decision is instructive and directly examines the question of whether Title 18 U.S.C. § 924(c)(1)(A) defines one offense or two, and gives a more detailed analysis of the question than was conducted by the Gamboa Court.

In analyzing the question, the Ninth Circuit looked for guidance from the Supreme Court's decision in Bell v. United States, 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905 (1955), which "laid down a presumption against construing statutes so as to lead to multiple punishment." Arreola, 467 F.3d at 1157 (citing United States v. UCO Oil Co., 546 F.2d 833, 837 (9th Cir. 1976)). In Arreola the Ninth Circuit noted that the fact that "a statute encompasses various modes of violation requiring different elements of proof ... does not compel" the conclusion that the statute creates separate offenses. 467 F.3d at 1157 (citing UCO Oil, 546 F.2d at 838). To determine whether § 924(c) creates separate offenses, or simply describes alternative means to commit the same crime, the Ninth Circuit employed the analytical framework established in UCO Oil, including: (1) language of the statute, (2) the legislative history and statutory context, (3) the type of conduct proscribed, and (4) the appropriateness of multiple punishment for the conduct charged in the indictment. Arreola, 467 F.3d at 1157.

After examining the language of the statute itself, the Ninth Circuit concluded that since the critical language of § 924(c) separates the "uses or carries" provision from the "possesses" provision, placing each in its own clause, separated by a disjunctive, "or," as "a matter of grammatical construction, the use of the disjunctive indicates that Congress was addressing two

separate acts." 467 F.3d at 1157. See also United States v. Combs, 369 F.3d 925, 931 (6th Cir. 2004) ("The two prongs of the statute are separated by the disjunctive 'or,' which, according to the precepts of statutory construction, suggests the separate prongs must have different meanings."). While it was clear to the Arreola Court that the statute proscribes two distinct acts, it was not clear from the statutory language that each act is a separate offense noting that Congress could have chosen to create separate sub-parts, "which would have presented a stronger argument that it creates separate offenses, but it did not." Id. Noting that the punishments associated with a violation of § 924(c) do not vary according to whether the defendant violated § 924(c) by "using or carrying" or by "possessing," the Arreola Court concluded that "…it is clear, as the courts held in Pleasant[1] and Combs[2], that § 924(c) names two distinct acts, it does not create two separate offenses. Rather, it identifies two ways in which a defendant could violate § 924(c)." Id. at 1157-58.

The Arreola Court then cited to United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995), which reached the same conclusion. In Street, the Eighth Circuit held, "[t]he statute lists all of the acts of violation in one sentence, and imposes a single penalty for all of them, a construction which indicates that Congress did not mean to create more than one offense." Id. (internal quotations omitted).

The Arreola Court then analyzed the legislative history of § 924(c) and concluded that "Congress intended to differentiate a defendant who 'possesses' a firearm in 'furtherance of' a crime from one who 'uses or carries' a firearm 'during and relation to' a crime, it is far from clear that Congress intended to create separate offenses." 467 F.3d at 1159. The Arreola Court was also persuaded by "the fact that Congress chose not to adopt the House bill—which

---

[1] United States v. Pleasant, 125 F.Supp.2d 173 (E.D.Va. 2000), aff'd 48 Fed.Appx. 909 (4th Cir. 2002).
[2] United States v. Combs, 369 F.3d 925, 931 (6th Cir. 2004).

6

explicitly proscribed separate offenses—suggests that Congress did not intend to separate § 924(c) into multiple offenses." Id.

When analyzing the type of conduct proscribed, the Arreola Court found that "[t]he similarity between the evidence necessary to prove a violation of the first clause of § 924(c) and the evidence necessary to prove a violation of the second suggests that § 924(c) proscribes only one offense." Id. at 1160.

When analyzing the final UCO Oil factor, "the appropriateness of multiple punishment for the conduct charged in the indictment," the Arreola Court held "it would seem absurd to permit multiple punishment of a defendant who violates both the 'uses or carries' clause and the 'possesses' clause." Id. The Arreola Court noted that if the two clauses of § 924(c) were held to be separate offenses, "the drug dealer could be punished twice for one contiguous act. Congress, when it revised § 924(c) after the Supreme Court's decision in Bailey, is unlikely to have intended such a result. The more logical conclusion is that Congress intended to widen the means of proving a single offense." Id.

The Arreola Court concluded by noting that the Sixth Circuit had reached a contrary conclusion, "finding the presence of a different standard of proof persuasive." Id. at 1161. See Combs, 369 F.3d at 932–33. However, the Arreola Court found, the standards of proof are not so dissimilar as to indicate that Congress intended to create two separate offenses, as opposed to identifying two ways in which a person could commit a single offense.

> Our construction of the statute, we respectfully suggest, appropriately applies the presumption against multiple punishment for a single act, is true to the plain meaning of the statute and its legislative history, and is a more logical interpretation of the distinct acts as falling within the conventional understanding of one crime.

Id.

The Supreme Court came to the same conclusion in Harris v. United States, 122 S. Ct. 2406, 2408 (2002) (overruled by Alleyne v. United States, 133 S. Ct. 2151 (2013) on other grounds) where the Court made clear, "As a matter of statutory interpretation, § 924(c)(1)(A) defines *a single offense*, in which brandishing and discharging are sentencing factors to be found by the judge, not offense elements to be found by the jury." (Emphasis added). While the Alleyne Court overruled Harris and requires any fact that increases the mandatory minimum is an "element" that must be submitted to the jury, the Court did not disturb the Harris Court's finding that § 924(c)(1)(A) defines a single offense.

**Section 924(c)(1)(A) is not Duplicitous but Criminalizes One Crime that can be Committed in Multiple Ways**

Section 924(c)(1)(A) provides enhanced penalties for "any person who, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The government does not believe that Count IV is duplicitous. "Duplicity is the joining in a single count of two or more distinct and separate offenses." Street, 66 F.3d at 974 (internal quotation marks omitted). Duplicitous indictments may present the following problems for a defendant including: (1) a defendant may not understand the charges against him, (2) a defendant may be convicted by less than a unanimous jury, (3) a defendant may be prejudiced by evidentiary rulings at trial, or (4) a defendant may be subjected to double jeopardy. United States v. Davis, 471 F.3d 783, 790 (7th Cir. 2006). The risk inherent in a duplicitous count, however, may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act. United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994).

Duplicity concerns are not present, however, when the underlying statute is one which merely enumerates one or more ways of committing a single offense. Street, 66 F.3d at 974. In

8

that situation, all of the different ways of committing that same offense may be alleged in the conjunctive in one count, and proof of any one of the enumerated methods will sustain a conviction. See id., see also United States v. Lueth, 807 F.2d 719, 733 (8th Cir. 1986).

Here, Count IV charges the defendant with committing one offense that Congress criminalized in Title 18 U.S.C. § 924(c), combining a firearm with drug trafficking, in more than one way. See Smith v. United States, 113 S. Ct. 2050 (1993), where the Supreme Court commented on Congress's intent to criminalize combining drugs and guns stating, "When Congress enacted the current version of § 924(c)(1), it was no doubt aware that drugs and guns are a dangerous combination." Id. at 2060. Enumerating the different ways one can combine drugs and guns does not render Count IV duplicitous.

**Count IV of the Indictment is Drafted According to Federal Pleading Standards**

The government submits that Count IV charges only one crime and is drafted appropriately. When, as in Flemings's case, a statute is worded in the disjunctive, federal pleading requires an indictment to charge in the conjunctive to apprise the accused fully of the charges. United States v. Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005), see United States v. Thunderhawk, 799 F.3d 12031, 1208 (8th Cir. 2015). Section 924(c)(1)(A) provides enhanced penalties when a person "during and in relation to a crime of violence or drug trafficking crime…uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). Section 924(c) is written in the disjunctive. Therefore, law dictates that the indictment charge in the conjunctive to meet the notice requirements entitled to by a defendant.

However, it is appropriate for the District Court to instruct the jury in the disjunctive form used in the statute, because "[p]roof of any one of the violations charged conjunctively in

9

the indictment will sustain a conviction." Id. (citation omitted). "An indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment...." United States v. Thompson, 560 F.3d 745, 748 (8th Cir. 2009) (quoting United States v. Brown, 330 F.3d 1073, 1078 (8th Cir. 2003)); see also United States v. Behler, 14 F.3d 1264 (8th Cir. 1994). The Eighth Circuit has commented that it is "bad pleading" if an indictment alleges alternative statutory purposes in the disjunctive. Bram v. United States, 302 F.2d 58, 60 (8th Cir. 1962) (quotation omitted), United States v. Brown, 330 F.3d 1073, 1078 (8th Cir. 2003) ("Indeed, we have observed that it is 'bad pleading' if an indictment alleges alternative statutory purposes in the disjunctive." (quoting Bram)).

**If this Court finds Count IV of the Indictment Duplicitous, the Appropriate Remedy is not Dismissal of the Charge**

Finally, even if this Court were to determine that Count IV is duplicitous, the government agrees with the Maginstrate's Findings and Recommendation that the appropriate remedy is not to dismiss it, but require the government to elect which prong of § 924(c)(1)(A) it wishes to proceed. (Findings and Recommendation, Filing No 30, p 3). Should this Court find that Count IV as pleaded is duplicitous, the question becomes what remedy is appropriate. The Eighth Circuit has not yet addressed the issue and articulated what remedy is appropriate if a charge is duplicitous. The Second Circuit indicates that where a count is duplicitous, it is not fatal to an indictment. United States v. Sturdivant, 244 F.3d 71, 79 (2d Cir. 2001). Remedies include "having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count" or "by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." Id.

10

Similarly, the Sixth Circuit found that a defendant could "require the government 'to elect either the count or the charge within the count upon which it will rely,' or the court may 'particularize the distinct offense charged in each count" in its jury instruction. United States v. Shumpert Hood, 210 F.3d 660, 663 (6th Cir. 2000). The Court in Hood also noted that a specific unanimity instruction is generally not required unless, "1) a count is extremely complex; 2) there is a variance between the indictment and the proof at trial; or 3) there is a tangible risk of jury confusion." Id.

**The Government Elects the "Possession" Prong of Count IV should the Court find it Duplicitous**

If the Court concludes that an election on a specific prong of Count IV is a necessary remedy to correct the pleading, the government elects to proceed on the "possession" prong of Count IV of the Indictment. The facts in this case show that the defendant possessed at least one firearm in furtherance of her drug trafficking activities that took place at and within her residence.

## CONCLUSION

The Government submits that Title 18 U.S.C. § 924(c)(1)(A) is not duplicitous and only criminalizes one crime. The Government contends that Count IV of the Indictment is appropriately filed to inform the defendant fully of the charges she faces.

WHEREFORE, the United States respectfully requests that Defendant's Motion to Dismiss Count IV be denied, and that the Court rule consistent with the remedies set forth above.

Dated this 4th day of August 2022.

                                                   UNITED STATES OF AMERICA

                                                   STEVEN A. RUSSELL
                                                   Acting United States Attorney
                                                   District of Nebraska

                                                 s/Thomas J. Kangior
                                      By:  THOMAS J. KANGIOR #21496
                                               Assistant United States Attorney
                                               1620 Dodge Street, Suite 1400
                                               Omaha, Nebraska 68102-1506
                                               (402) 661-3700
                                               Thomas.kangior@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Mike Hansen, Attorney for Defendant.

                                                   s/Thomas J. Kangior
                                                 THOMAS J. KANGIOR
                                                 Assistant United States Attorney